## No. 11,989.

### FORTUNE JAUBERT, TUTOR, ET ALS. VS. JOHN QUILTER.

In the *dation en paiement* as in the contract of sale, when the vendor acknowledges whether expressly or by implication the purchaser's title and holds under and for the purchaser, the delivery by the vendor to the purchaser is to be deemed accomplished. Civil Code, Arts. 2439, 2455, 2556.

APPEAL from the Fifteenth Judicial District Court for the Parish of East Baton Rouge. *Buckner, J.*

---

*Thomas J. Kernan and Samuel G. Laycock* for Plaintiffs, Appellees.

*Cross & Cross* for Defendant and Intervenor, Appellant.

Argued and submitted January 7, 1896.
Opinion handed down January 20, 1896.

The opinion of the court was delivered by

MILLER, J. The plaintiffs, heirs of Jean B. Ghebelin, sue to be decreed owners of a tract of land, alleged to have been acquired by him from the defendant. The answer is, the act conveying the property was a simulation, and that defendant has always been in possession. There was an intervention by the wife of defendant, assailing the verity of the act, alleging she was his creditor for paraphernal funds, and praying that the property be decreed that of her husband and subjected to her rights. From the judgment in plaintiff's favor, recognizing his ownership and dismissing the intervention, this appeal is prosecuted by defendant and the intervenor.

The defendant bought the property, the subject of this controversy in 1883 for four thousand three hundred dollars, giving in part payment his note for one thousand eight hundred dollars, bearing eight per cent. interest. In 1885, by public act, he conveyed the property to J. B. Ghebelin, the grandfather of plaintiffs, for two thousand seven hundred and forty-five dollars, the amount of defendant's note and interest, secured by vendor's privilege and mortgage acquired and then held by Ghebelin. The defendant and Ghebelin were brothers-in-law. The defendant's testimony is that the sale was not real, that he always remained in possession, paid the taxes in Ghebelin's life, and for insuring the property; that one of the plaintiffs told him to make out a bill for improvements and it would be paid, and he did make out the claim, putting in the purchase price he paid on the property, that is the cash payment one thousand eight hundred dollars, and also the amount of rice shipped in Ghebelin's name, because his son told witness it was better, as it might be seized if shipped in his name, and the defendant further testified the statement of his claim was in the nature of a compromise. On the other hand, Ghebelin, the son, testified to the consideration of the sale, that is the amount of the note given by defendant for the purchase price; that after the sale defendant held possession for the elder Ghebelin on whose behalf witness demanded rent, that the

rice referred to by defendant in his testimony was shipped on account of rent as witness understood at the time; as to taxes, witness states he paid them in every instance, except once or twice, when the defendant paid, because, the witness testified, the elder Ghebelin said: "Why don't you make Quilter pay some rent?" that in consequence he did pay for that year, and the witness supports his statement by producing the tax receipts and other bills paid on the property, all charged by witness to his father. Another witness, plaintiff's attorney, testifies he demanded possession of the property from the defendant, who made no claim as owner or that the sale was a simulation, but made a claim for improvements, stating he would not give possession until it was paid. This is the claim defendant testifies was in the nature of a compromise. There is also in the record the answer of defendant in a suit brought by one of his creditors to annul the transfer by him to Ghebelin as unreal and in fraud of the creditor's rights, and the answer avers the verity of the sale, and prays that the creditor's suit be dismissed.

The defendant and intervenor claimed a continuance to obtain testimony contradicting the statement of one of plaintiff's witnesses. The statement imputed to him was: He never said that Quilter and his wife had a just claim in the transactions between him and his father, the elder Ghebelin, and the witness was willing defendant should take out his claim for improvements. The defendant had the benefit of the contradictory testimony and it has had with us its full weight. There is also a bill of exceptions of defendant and intervenor to the rejection of the copy of the inscription in the mortgage office of Mrs. Quilter's mortgage claim, and the tax receipts of 1889, 1890 and 1891, offered after the case was closed. In our view the rejected testimony would not affect the issue. Testimony is offered on behalf of the intervenor to sustain her paraphernal claim as well as to support the position of the defendant. Under our view of the rights of the parties we find it unnecessary to determine the plaintiff's exceptions to the testimony.

There has been some discussion as to the character of this action. It is brought to assert title against one who sets up title. Plaintiff exhibits his title from defendant, and defendant claims that his conveyance was a simulation, hence his title still subsists. The action is petitory. It is not for defendant to complain that plaintiff did not resort to the suit of the lessor for possession or other mode of pre-

senting the issue, nor is there any exception to the suit. Defendant assumed the position of an owner denying plaintiff's title. The plain-tiff was entitled to bring the suit adapted to the pretensions of the defendant. Code of Practice, Arts. 43 *et seq.*

The testimony, irrespective of the question of its admissibility, offered by both parties, fully sustains the conveyance by defendant to the elder Ghebelin. The price stipulated in the act, two thousand seven hundred and fifty dollars, the amount of defendant's note, acquired by Ghebelin, was, in our view, serious, and is not, as we appreciate the argument, assailed for inadequacy. No man is pre-sumed to give, or to pay or give, value for property to present it to another. Ghebelin manifested his appreciation of acquiring owner-ship by surrendering to the vendor, the defendant, his note bearing mortgage on the property. His insistence, testified to by the wit-ness Ghebelin, that the defendant should pay rent, and other circum-stances appearing in this record, mark the position of the elder Ghebelin as that of an owner of the property he had acquired for value. In our view the testimony puts defendant in the position of one holding under Ghebelin. The fact that rent was not vigorously exacted is due, we think, to the regard and liberality of Ghebelin for his brother-in-law, the defendant. There is the testimony that the defendant paid some taxes. This is a circumstance implying ownership; is to be weighed with the fact that the payment, as it seems to us, was owing to Ghebelin's complaint to his son to make defendant pay some rent. Instead, the defendant paid, or arranged to pay, taxes that year. The testimony shows that Ghebe-lin, or his son for him, paid the taxes for the other years—all, as we understand the testimony, except for the year paid by defendant. In view of the testimony, the payment of taxes and other items connected with the property afford but scant aid to defendant's pre-tensions of ownership. It is urged there was no delivery to Ghebe-lin. In the *dation en paiement*, as in the sale, delivery may be per-fected by the vendor holding after the sale as the tenant or for the purchaser. That, we think, was the relation of the parties. There was, in one instance at least, a shipment of rice produced by defend-ant on the property and shipped to provide for the rent for Ghebelin. There was the payment by defendant of taxes for one year, instead of the rent, of the non-payment of which Ghebelin complained. With still greater significance is the fact, that defendant made a.

claim, though he qualifies it in his testimony as a compromise, for improvements on the property. Added to all this is the fact that defendant never advanced, until this suit was brought, any pretension of ownership, and in his answer in a suit of his creditors, attacking the sale to Ghebelin, as made in fraud of the creditors of defendant, he admitted and avowed the reality of the sale, and that he held for Ghebelin, the purchaser. In view of all this, we think the contention of no delivery must fail, if, indeed, delivery in the *dation en paiement* as in the contract of sale is not the incident of the public act by which the property was conveyed. Civil Code, Arts. 2479, 2655, 2656, 30 An. p. 966. It is our conclusion the conveyance to Ghebelin is sustained by the testimony, and that defendant's possession was that of Ghebelin.

We can perceive no basis to remand the case as we are asked to do by defendant. It seems to have been fully tried in the lower court. If, as we hold, the title passed to Ghebelin in 1885, there can be no claim of the wife of defendant on the property for paraphernal funds alleged to have been received by him and the amount recorded years after.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.